## TUSTIN v. FAUGHT et al.

WHERE the grantor named in the body of a deed signs a different name from that recited in the body of the deed, it is not entitled to be admitted in evidence, until it. has been shown by parol proof that the person who executed the deed was the same one whose name is recited in the body.

Where real estate is conveyed to a married woman by a deed which recites a consideration of money paid, as well as love and affection, the land conveyed becomes the common property of the husband and wife, and the deed of the husband alone is sufficient to convey it.

A defendant in an action of ejectment may show in defense a title to the demanded property acquired by him after the commencement of the action.

APPEAL from the District Court, Seventh Judicial District, Sonoma County.

*John Currey*, for Appellants.

If the Court below refused to consider the title of the appellants, of which they gave evidence at the trial, because they did not show that they had title at the commencement of the action, then we contend that the Court erred, because the defendants, who were in the possession of the demanded premises at the commencement of the action must, in the absence of direct proof to the contrary, be presumed to have been in such possession lawfully and rightfully.

In *Hill* v. *Draper* (10 Barb. 458), the Court say: "The defendants in possession of the disputed premises, are presumed to have a valid title thereto, and the plaintiffs, to entitle themselves to recover, must overcome that presumption by proving title out of the defendants and in themselves." (*Jayne* v. *Price*, 5 Taunt. 329 ;. *Carpenter* v. *Weeks*, 2 Hill, 341 ; 10 Johns. 339 ; 11 Id. 504 ; Best on Presumptions, 87.) This rule is the doctrine of the common law, of which our statute (Wood's Dig. 46, Sec. 9) is only declaratory. This statute says, in effect, that the occupation of real property by any other person than the real owner, shall be deemed to be under and in subordination to the legal title, unless it shall appear that such premises have been held adversely to such legal title. As to the rule at common law, see 3 Johns. Cases, 109, 124 ; 2 Ind. 125.

That the possession of the occupant is adverse to the true title

will never be presumed from the mere act of possession; and if relied on as in opposition to the real title, its adverse character must be plainly and positively proved. (1 Wash C. C. 78–80; 6 Cow. 125; 2 Wend. 13, 140; 2 Har. & John. 112–125; 7 Wheat. 59–109; 4 Wash. C. C. 38; 4 Wend. 423, 672.)

If we are right in respect to the position of the defendants, from two of whom the intervenors derived title, then such intervenors had the same rights of defense as their grantors had, with whose rights their own were connected as successors in interest.

*F. D. Colton* and *M. M. Estee,* for Respondent.

If it should be held that some or all of the appellants took an interest in the premises from their deeds, then we contend that, as it was acquired after the commencement of the action, it cannot avail the appellants. But they contend that being in possession at the commencement of the action, the presumption would be, that they were in possession under those tenants in common, from whom plaintiff did not derive title. We reply:

1st. They endeavored to show title, and failed. The presumption is, that they proved all the right to possession which they had.

2d. In their answers they claim title; they do not claim or pretend that they ever had license to enter.

3d. Appellants in their answers do not deny the possession of plaintiff, and their ouster of him. If they entered under a title, they should show it. If one tenant in common ousts another, the presumption would be, that he had another and paramount title.

CROCKER, J. delivered the opinion of the Court—NORTON, J. concurring.

This is an action to recover possession of a tract of land in Sonoma County—a portion of the Rancho "Laguna de San Antonio." Both parties claim title under Bartolome Bojorques, the grantee of the Mexican Government. The Court rendered a judgment against all the defendants except Gaston, from which, and from an order overruling a motion for a new trial, they appeal.

The plaintiff, to maintain the action, introduced in evidence a deed of conveyance, dated December 8th, 1855, executed by Bar-

tolome Bojorques and eleven others.   The defendants made several objections to this deed, one of which was that it was an unexecuted instrument.   It appears, from an examination of the record, that the names of twelve persons, mostly Spanish names, are described as the grantors in the body of the conveyance, and that the names and seals of twelve persons, mostly Spanish, are attached as signatures to the deed, but these vary from each other; some of the names in the body of the deed do not appear in the same terms among the signatures, while several signatures do not appear in the same words among the names in the body of the deed.   Whether they were in fact all the same persons, under different names, it is unnecessary to determine; for this objection of the defendants is untenable.   The deed shows clearly, upon inspection, that several of the persons named in the body of the instrument signed their names to it; and to that extent, at least, it was executed, and properly admissible in evidence.   This objection was made to a similar deed in the case of *Colton* v. *Seavey et al.* (22. Cal. 496), and was overruled.

It was also objected to this deed, that its execution was not so proved as to entitle it to be received in evidence.   This objection is also untenable.   The execution of the conveyance appears to have been acknowledged, by all the parties who signed the deed, before a Notary Public, who was also the subscribing witness to it —except as to one grantor, whose acknowledgment was taken before the County Clerk—and duly certified to by him.

The defendants introduced in evidence a deed from Bartolome Bojorques to Pedro Bojorques and seven others, his children, for the undivided eight-ninths of the rancho, dated November 20th, 1851.   These grantees are the same persons under whom the plaintiff claims title, and by whom, with their husbands, he claims his deed was executed.   One of the grantees in this deed was Marcella Lopez, whose name appears in the body of the plaintiff's deed as Maria Marcella Lopez, but her name does not appear among the signatures, at least not in either of those terms; and if it appears in another name, that fact should have been proved. On the second day of February, 1857, Marcella Lopez and her husband executed to Richardson & Hunt a conveyance of the

undivided one-ninth of the rancho. On the 12th day of June, 1857, Richardson & Hunt conveyed to the defendant Freeman the tract of land described in the complaint; and afterward, on the third day of April, 1858, Hunt conveyed to Freeman the undivided one-fourth of all his then interest in the rancho. These two last deeds were not executed, however, until after April 15th, 1857, the date of the commencement of this action. It appears, therefore, that at the time of the commencement of this action, the plaintiff was the owner, as tenant in common with others, of an undivided interest in the rancho, including the premises in controversy, the extent of that interest depending upon the number of the grantees named in the deed of November 20th, 1851, who signed the deed to him. It also appears, that, at the time of the commencement of this action, the defendant Freeman was a stranger to the title, but that he afterward acquired an interest to the extent of the undivided one-ninth in the premises in controversy, and from that time, to wit: June 12th, 1857, he was a tenant in common therein with the plaintiff.

It further appears from the record that Howe and his wife, Angela de la Luce Howe, daughter of Bartolome Bojorques, executed a deed to Hopkins & Bennett, dated July 22d, 1857, conveying the undivided one-ninth of the rancho. Also, that Richardson executed a deed to Hopkins & Bennett, dated July 23d, 1857, conveying the undivided one-eighteenth of the rancho. To the first of these deeds it is objected that it conveyed no title or interest in the premises, because the grantors, Howe and his wife, had previously, by the deed of December 8th, 1855, conveyed all their interest in the premises in controversy to the plaintiff. An examination of this latter deed shows that Henry Howe is properly named in the body of the deed, and his name duly appears among the signatures thereto. The name of Angela de la Luce Howe appears in the body of the deed, and Maria de la Luce Howe among the signatures; and it is evident that these different names refer to the same person. But it is urged that the certificate of the acknowledgment to the deed to the plaintiff, so far as it relates to the wives of the several grantors, is defective. This part of the certificate is in these words: After naming the wives, it proceeds " being exam-

ined by me, separate and apart from their husbands, acknowledged to me that they signed the same without fear or compulsion from them." This is clearly defective, because it does not show that they were made acquainted with the contents of the conveyance, or that the examination was " without the hearing " of their husbands, or that they executed the same without " undue influence " of their husbands, or that they did " not wish to retract the execution of the same." To this objection it is replied, that the conveyance from Bartolome Bojorques to his children is not a deed of gift, but of bargain and sale upon the consideration of four hundred and sixty-one dollars, money paid, as well as love and affection, and therefore the title vested in Henry Howe, the husband, and the wife acquired no separate estate therein, but it became and was the common property of the husband and wife, and the deed of the husband alone was sufficient to convey it. The deed being one of bargain and sale, founded upon a money consideration, and not a deed of gift, the property conveyed became common property, and the deed of the husband was sufficient without the signature of the wife. (*Meyer* v. *Kinzer*, 12 Cal. 253.) It follows that no title or estate was conveyed by this deed to Hopkins & Bennett, dated July 22d, 1857, and it is not necessary therefore to follow out the title claimed under it.

It will also be found that the other deed from Richardson to Hopkins & Bennett, conveyed no title or interest in or to the premises in controversy to the grantees. This deed is dated July 23d, 1857, and it was not recorded until August 5th, 1857 ; but prior to those dates, to wit: the twelfth day of June, 1857, Richardson & Hunt had conveyed their interest in the premises in controversy, to Freeman, and this deed was duly recorded August 3d, 1857. It was therefore both dated and recorded first. It follows that no title or estate passed by this deed, and it is not necessary to trace out the title claimed under it.

This examination shows that none of the defendants or intervenors who appeal, except Freeman, had any title to the premises, either at the commencement of the action or at the time of trial. The Court, among other findings, found as follows: " That the defendants in said action and intervenors therein, excepting the defendant

Martin Gaston " (who is not a party to the appeal), " proved no valid title in themselves, or either of them, in or to said lands described in plaintiff's complaint, or any part thereof; that previous to the commencement of this action the said defendants entered upon the said lands described in plaintiff's complaint and ejected the plaintiff therefrom, and ever since said time have been in possession thereof." The Court also found that the plaintiff was the owner of the undivided two-thirds of the premises in controversy, and that he was entitled to the possession of the land against all the defendants and intervenors, except Gaston, and entitled to a judgment against them for the restitution of the premises and for costs, and judgment was rendered accordingly.

The finding as to want of title in the defendants and intervenors who appeal is correct as to all of them, except as to Freeman, who, as we have already shown, became the owner, on the twelfth day of June, 1857, of the undivided one-ninth of the premises. The Court below probably held that a defendant could not show a title acquired since the commencement of the action; and as Freeman's title was acquired since, it was probably for that reason excluded. But there is no good reason why a defendant may not show such after-acquiring title. (*Moore* v. *Tice*, 22 Cal. 513; *Smith* v. *Billett*, 15 Id. 26.) By that title Freeman became the tenant in common with the plaintiff. Whether he did any act, after he became such tenant in common, which would amount to an ouster of the plaintiff, does not appear in the record, except in the general finding of the Court that, previous to the commencement of the action, all the defendants entered and ousted the plaintiff. But this does not show any ouster after Freeman became tenant in common. From that time he may have acknowledged the plaintiff's title, and have avoided any act or declaration which would constitute an ouster of the plaintiff. We have recently laid down the rules which govern the rights of tenants in common, and what will constitute an ouster in such cases. (*Carpentier* v. *Webster*, decided at the July Term, 1863.) No judgment for damages was claimed or rendered, and the question is one, therefore, merely of the right of possession. The plaintiff is clearly entitled to the possession of the premises to the extent of the interest

acquired by him by the deed of December 8th, 1855, which the Court finds was the undivided two-thirds, the correctness of which we have no certain means of determining from the record before us. The defendant Freeman is entitled only to the possession of the undivided one-ninth of the premises in controversy, and it will be necessary to ascertain the extent of his possession, and whether he has ousted the plaintiff, his co-tenant, for which purpose a new trial as to Freeman will be necessary.

The judgment is therefore affirmed with the costs of appeal, as to all the defendants and intervenors, except as to the defendant Freeman, and the judgment against the said Freeman is reversed, and the cause remanded for a new trial as to him.

In the case of *Carpentier* v. *Webster*, a rehearing was granted, and the case is still pending.—REPORTER.